WILLIAM L. ALLEN             *     IN THE

ANN L. ALLEN

DENISE ANGLES              *     CIRCUIT COURT

529 Oella Avenue

Ellicott City, Maryland 21043      *     FOR

       *Plaintiffs*            *     BALTIMORE COUNTY

                          *

v.                            *

                                     CCB11CV0033

BANK OF AMERICA, N. A.        *

d/b/a BAC HOME LOANS SERVICING, LP

100 North Tryon Street          *     CASE NO. _03-C-10-012530_

Charlotte, North Carolina 28255

                          *

       SERVE ON:

       Glenn A. Cline, Esq., Resident Agent    *

       Ballard Spahr LLP

       300 East Lombard Street, 18th Floor    *

       Baltimore, Maryland 21202-3268

                          *

and                           *

WESTERN UNION COMPANY      *

d/b/a PAYMAP, INC.

12500 East Belford Avenue       *

Englewood, Colorado 80155-6992

                          *

       SERVE ON:

       CSC-Lawyers Incorporation Services Co. *

       7 St. Paul Street, Suite 1660

       Baltimore, Maryland 21202

                          *

and                           *

EDWARD S. COHN, ESQ.        *

Cohn, Goldberg & Deutsch, LLC

600 Baltimore Avenue, Suite 208    *

Towson, Maryland 21204

                          *

       SERVE ON:

       Edward S. Cohn, Esq., Resident Agent   *

       Cohn, Goldberg & Deutsch, LLC

       600 Baltimore Avenue, Suite 208     *

       Towson, Maryland 21204

RECEIVED AND FILED

2010 DEC 14 ...

CLERK OF THE CIRCUIT COURT
BALTIMORE COUNTY

and                          *

FEDERAL NATIONAL MORTGAGE
ASSOCIATION (Fannie Mae)           *
3900 Wisconsin Avenue NW
Washington, DC 20016           *

        SERVE ON:          *
        Timothy J. Mayopoulos, Esq., Resident Agent
        Vice President, General Counsel    *
        3900 Wisconsin Avenue NW
        Washington, DC 20016        *

        *Defendants*           *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## COMPLAINT
## AND
## PRAYER FOR JURY TRIAL

     William Allen, Ann Allen and Denise Angles, through their attorneys, Jane Santoni,

Kathleen S. Skullney and Williams & Santoni, LLP, hereby sue Defendants BAC Home Loans

Servicing, LP, Bank of America, N.A., Western Union Company, Edward S. Cohn, Esq., and

Federal National Mortgage Association, and respectfully state the following:

### INTRODUCTION

     1.    This is an action is brought by Mr. and Mrs. Allen and their daughter, Denise

Angles, seeking relief from Defendants' egregious servicing failures and practices, specifically:

failure to properly apply payments and to properly service Mr. and Mrs. Allen's mortgage, the

charging of late fees that were not due and owing, wrongful foreclosure and the charging of

foreclosure related fees, wrongful debt collection, negligence, breach of contract, violations of

consumer protections, failures to respond and provide required information, and disparagement

of title. Mr. and Mrs. Allen made mortgage payments by authorizing defendants to directly debit

their bank account. Following the transfer of servicing, certain payments were incorrectly

debited or debited and not correctly applied, or not applied at all. When Mr. Allen attempted to find out what had happened to his loan account and to get it corrected, employees of Defendant Bank of America clearly lacked the training and expertise to assist him. They imparted only vague and conflicting information when Mr. Allen attempted to find out why his payments were debited from his bank account but not applied to his mortgage, indicating that the correct information for Mr. and Mrs. Allen's account was either inaccessible or non-existent. Defendant Bank and Servicer failed to provide a payment history or to take the required corrective action pursuant to Mr. Allen's qualified written request and his repeated documentation of errors in the Allens' account. Defendants BAC and Fannie Mae ultimately and wrongfully placed Mr. and Mrs. Allen and Ms. Angles into foreclosure when no default should have existed. Defendant Cohn wrongfully pursued the foreclosure action when he knew that the default and debt being alleged against Mr. and Mrs. Allen was disputed and which foreclosure at least one Bank of America employee stated in writing to him should not proceed. Defendants wrongfully have attempted to collect debts not owed by Mr. and Mrs. Allen and Ms. Angles and are continuing to do so. The attempted foreclosure threatened Ms. Angles' licensed day care business which she conducts in the home and caused her great anxiety over her ability to continue housing and caring for her two grandchildren who are in her custody. As a result of Defendants actions, Mr. and Mrs. Allen and Ms. Angles have suffered and continue to suffer substantial harm, mental anguish, and significant emotional distress.

## PARTIES

2.      William Allen is married to Ann Allen and both are residents of Baltimore County, Maryland, where they have lived at the subject property of 529 Oella Avenue, Ellicott City, Maryland 21043 since 1967.

3.     Denise Angles is the adult daughter of Mr. and Mrs. Allen and joint owner of the subject property. She lives with her parents at the subject property of 529 Oella Avenue, Ellicott City, Maryland 21043, where she also conducts a licensed day care business.

4.     BAC Home Loans Servicing, LP (hereafter "Servicer") is the mortgage servicing company wholly owned by Defendant Bank of America, N.A., conducts business in Maryland and is currently servicing Mr. and Mrs. Allen's mortgage on behalf of the Noteholder/secured party. BAC Home Loans Servicing, LP is the successor servicer to Countrywide Home Loans Servicing, LP (hereafter "Countrywide") which in turn was the successor servicer to the original servicer GreenPoint Mortgage Funding, Inc. (hereafter "GreenPoint").

5.     Bank of America, National Association (hereafter "Bank") is a Delaware corporation, a bank holding company and financial holding company that regularly conducts business in Maryland, and is the financial institution that wholly owns and is responsible for Defendant BAC Home Loan Servicing LP (collectively "Bank and Servicer").

6.     Western Union Company is a Colorado company incorporated in Delaware, which conducts business in Maryland and which includes as a division Western Union Payment Services, which in turn owns Paymap, Inc., the entity authorized by GreenPoint, the original servicer to implement the equity accelerator program in which Mr. and Mrs. Allen enrolled and by which mortgage payments were debited from their bank account (hereafter "Western Union" or "Paymap").

7.     Edward S. Cohn, Esq. is an attorney with the law firm of Cohn, Goldberg & Deutsch, LLC who acted as substitute trustee, attorney, and agent for Defendant Noteholder Fannie Mae and Defendants Bank and Servicer in pursuing the wrongful foreclosure action against Mr. and Mrs. Allen, and threatened to sell their home at auction (hereafter "Cohn").

4

8.      Federal National Mortgage Association (hereafter "Noteholder Fannie Mae") is the federal government sponsored entity which holds the Note for Mr. and Mrs. Allen's mortgage loan and is the secured party under the deed of trust for Mr. and Mrs. Allen's mortgage.

## JURISDICTION AND VENUE

9.      This Court has proper jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 4-401, § 6-102 and § 6-103.

10.      Venue is proper in this Court, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201 inasmuch as all Defendants either reside in or regularly conduct business in Baltimore County, Maryland, and the cause of action arose in Baltimore County, Maryland.

## FACTUAL ALLEGATIONS

11.      Mr. and Mrs. Allen are husband and wife who both reside at the subject property of 529 Oella Avenue, Ellicott City, Maryland 21043, and have lived in the home since 1967. Other than for the brief two year period noted below, Mr. and Mrs. Allen have been the owners of their home for as long as they have lived there. Mr. Allen is nearly 76 years old and Mrs. Allen is 73 years old.

12.      On June 13, 2000, in an effort to reduce their responsibilities, ease their retirement and have more time for travel, Plaintiffs Mr. and Mrs. Allen deeded ownership of the home to their adult daughter, Plaintiff Ms. Denise Angles.

13.      Ms. Angles resides with Mr. and Mrs. Allen in the home where she has provided licensed child day care for eleven years.

14.      On September 17, 2002, in conjunction with more favorable refinancing of the property, Ms. Angles redeeded the home to herself and Mr. and Mrs. Allen, all as joint tenants.

15.     On that date, the Plaintiffs refinanced the mortgage on their home with a loan

from GreenPoint. Mr. and Mrs. Allen signed the Note, and all three Plaintiffs signed the Deed of

Trust for the mortgage loan. According to the terms of the Note, the monthly mortgage payment

is $901.49.

16.     Subsequently, all the mortgage payments were made by Plaintiffs on a timely

basis for more than three years.

17.     On or about January 19, 2006, the Plaintiffs received a written "Special Offer"

from GreenPoint to reduce the cost of their mortgage debt by $31,358.80 with GreenPoint's

electronic mortgage payment option known as the Equity Accelerator Program (hereafter

"Program") (attached as Exhibit 1).  According to the letter, the Equity Accelerator Program

would make automatic debits from the Allens' bank account twice a month to "accumulate extra

funds that are applied directly to your principal balance" by mortgage payments made monthly

on the regular due date.

18.     The contract stated that the Program was offered by GreenPoint as "sponsor"

pursuant to an agreement with Paymap, Inc. and Western Union as affiliates, and that the

Program did not change any of the terms or requirements of the mortgage "in any way." The

automatically debited funds were to be held briefly by Western Union, which would deduct its

"Program fees" and then transfer the funds to a custodial account held by GreenPoint. From that

account, mortgage payments would be made once a month when due.

19.     Plaintiffs Mr. and Mrs. Allen enrolled in the program with GreenPoint and

received a "Welcome Letter" dated February 22, 2006 stating the April 2006 loan payment of

$901.49 would be paid to GreenPoint by debiting the Plaintiffs' checking account at Citizens

National Bank beginning March 23, 2006 in the amount of $492.81 and again in the same amount on April 3, 2006.

20.     Mr. and Mrs. Allen complied at all times with the terms of the Program contract.

21.     In September, 2007, the Plaintiffs' bank was acquired by PNC Bank, and, according to Plaintiffs' bank records, withdrawals through Paymap continued.

22.     Plaintiffs never received any written or verbal notice from Defendant Western Union or Paymap or GreenPoint that there were any problems with the mortgage payments during this time.

23.     Thus, as of October, 2008, Plaintiffs had made their mortgage payments responsibly and on time for a full six years.

24.     On or about October 15, 2008, Mr. and Mrs. Allen received a letter from GreenPoint notifying them that the servicing of their mortgage loan was being transferred to Countrywide Home Loans Servicing, LP (hereinafter "Countrywide") effective November 1, 2008. The letter also advised that the automatic withdrawals through Paymap from Plaintiffs' bank account to pay the mortgage loan would continue uninterrupted with Countrywide.

25.     In addition, and per federal requirements, the Allens received a "Notice of Assignment, Sale or Transfer of Servicing Right" which, among other requirements, stated that they should receive the same notice from the new servicer, and that there was a 60 day period following the transfer during which late fees could not be charged for payments not yet received by the new servicer, and that the servicer was required to respond to the Allens for properly requested information and corrections to their loan account.

26.     Despite the assurances of continued Program payments, and not realized by Plaintiffs at the time, their bank records show Paymap did not properly debit their account the

second time in October, 2008 and debited their bank account only once in November 2008 (on November 3, 2008) in the amount of $492.81.

27. Plaintiffs' bank account was debited by Defendant Paymap next on December 1, 2008 in the amount of $492.81.

28. About the same time, Mr. and Mrs. Allen inquired into refinancing their mortgage and were told that their loan account had been reported as in default.

29. Again despite the 60 day grace period and the October payment notwithstanding, on or about December 8, 2008, Mr. and Mrs. Allen received a Notice of Intent to Accelerate from Countrywide stating that they were in default as of October 1, 2008 and would need to pay the equivalent of three months payments plus late fees totaling $2,752.47 by January 7, 2009 to cure the default.

30. The Allens and Ms. Angles received no notice up until this time that there was a problem with the account and the Allens' bank account was debited again thereafter on December 29, 2008 for $492.81.

31. Mr. Allen called Countrywide numerous times to find out what was going on and how the loan could be in default when the mortgage payments were being automatically debited from the bank account each month.

32. Mr. Allen was not able to get any definitive or satisfactory responses, nor was he directed to anyone who could provide such information and take the necessary steps to correct the obvious errors. The Allens' bank account was debited again on January 2, 2009.

33. On or about January 12, 2009, Plaintiffs received a second Notice of Intent to Accelerate from Countrywide stating a total of $2,188.13 was due by February 11, 2009 to cure the default.

8

34.    By this time, Plaintiffs were becoming very distressed and, again, Mr. Allen called Countrywide numerous times to find out what was going on and how the loan could be in default when the mortgage payments continued to be automatically debited from their bank account each month.

35.    Without any resolution, the Allens' bank account was debited three times in February 2009 (on February 2, 2009, February 3, 2009 and February 27, 2009) in the amount of $492.81 each time.

36.    Nevertheless, on or about March 12, 2009, Mr. and Mrs. Allen received a third Notice of Intent to Accelerate from Countrywide stating that a total of $2,217.89 was due by April 11, 2009 to cure the default.

37.    By this time, Mr. and Mrs. Allen and their daughter were so worried and stressed over the situation that they were losing sleep and worrying about each other's health. Mr. Allen in particular was suffering from sleeplessness, shortness of breath and other serious symptoms of stress.

38.    Again, in response to Countrywide's March 12, 2009 letter, Mr. Allen frantically tried calling Countrywide numerous times, but could not get anyone to respond to his offers of documentation that the mortgage was not in default or explain why they were receiving the Notices of Intent to Accelerate, nor was he directed to anyone who could do so.

39.    Without any communication from Countrywide or Paymap, sometime thereafter Plaintiffs were notified that Countrywide was taken over by Bank of America, but just like before, the mortgage payments continued to be taken out of the Allens' bank account twice a month.

40.     Thereafter, on or about May 13, 2009, Mr. and Mrs. Allen received yet another Notice of Intent to Accelerate, this time from Defendant Bank and Servicer on its letterhead stating that the loan account was in default as of February 1, 2009 and demanding that a total of $3,089.19 be paid by June 12, 2009 to cure the claimed default.

41.     At the same time, the Allens' bank statements indicate that their account was debited twice in both May and June, 2009 for the same $492.81.

42.     The Allens now were so worried and anxious that they sought help from their own bank by applying for a reverse mortgage, but were told that they were not eligible because their loan account was "in foreclosure."

43.     The regular debit to the Allens' bank account occurred in July, 2009 and the full payment was made, but subsequently was wrongfully refused by Defendant Servicer and returned to the Allens. No further debits to the bank account were made, and the Program apparently terminated by Defendant Western Union and Paymap.

44.     On or about July 22, 2009, Mr. and Mrs. Allen received a Notice of Intent to Foreclose from Cohn, Goldberg and Deutsch, LLC (hereafter "foreclosure firm") (attached as Exhibit 2). This notice was accompanied by two letters from the foreclosure firm indicating 1) that it was attempting to collect a debt and that the Allens could dispute the debt by notifying its office, and 2) that their loan was owned by Defendant Fannie Mae, and that it was "designated" by Fannie Mae as the contact for pursuing ways to avoid foreclosure.

45.     By this time, Mr. and Mrs. Allen were distraught that they would lose their home of 43 years even though they had provided for timely payments on the mortgage. They sought help from a family friend, Carrie Corcoran.

10

46.     On August 1, 2009, Ms. Corcoran wrote to Defendant Cohn, at Cohn, Goldberg and Deutsch, LLC, explaining that Paymap had been automatically debiting Plaintiffs' bank account each month to pay their mortgage and that a payment history had been requested from Paymap and Bank of America  (attached as Exhibit 3).

47.     In addition, as a result of Ms. Corcoran's efforts, Mr. Allen received a fax and letter dated August 10, 2009 and August 7, 2009 respectively from Defendant Western Union under the title "Equity Accelerator". The letter stated that the Program had failed to disburse the December, 2008 payment on time and requested that no fees be assessed and no negative credit notations be made against the Allens. The fax stated that the letter was forwarded to Defendant Servicer (attached as Exhibit 4).

48.     On or about September 21, 2009, Plaintiffs received a Notice to Occupant letter advising them that a foreclosure action had been filed.

49.     Thereafter, Ms. Corcoran spoke with Zachary Harris, a Bank of America employee, on or about September 28, 2009, regarding the September 21, 2009 letter Plaintiffs had received advising them that a foreclosure action had been filed.

50.     Mr. Harris sent an email to Angela Wilson at Cohn, Goldberg and Deutsch on October 7, 2009 which makes it clear that the amount of money Bank of America was demanding was disputed and thus Mr. Harris ordered that the foreclosure be placed "on hold until further notice" (attached as Exhibit 5). Defendant Bank and Servicer and Defendant Fannie Mae should not have been foreclosing on the property.

51.     Defendants Bank and Servicer, and Fannie Mae are prohibited under Md. Code Ann., Com. L. § 14-202 from attempting to collect a debt that they know or should know is not owed, and by so doing have caused Mr. and Mrs. Allen to suffer serious emotional distress.

52.     With the help of Ms. Corcoran, Plaintiffs requested Defendant Servicer to provide them with a full payment history of their loan, which it has failed to do as required by 12 U.S.C. § 2605 (RESPA) and by Md. Code Ann., Com. L. § 12-308(e), providing only a limited statement of payments from November 2008 through May 2009.

53.     Defendant Bank and Servicer is required by Defendant Noteholder Fannie Mae to maintain a complete individual file for Mr. and Mrs. Allen's loan, including a system that can produce the information Mr. Allen continually sought and was entitled to, and which Defendant Bank and Servicer failed to give him.

54.     Furthermore, despite the acknowledgment of Mr. Harris that the Allens disputed Defendant Servicer's amount owed, Defendant Servicer wrongfully has taken no actions whatsoever to investigate and correct the obvious errors to Mr. and Mrs. Allen's loan account, also required by RESPA and Maryland law.

55.     Mr. and Mrs. Allen at all relevant times have challenged the amount being demanded by Defendant Servicer since December 2008, and repeatedly have attempted to resolve the accounting and payment application errors in their account.

56.     Furthermore, Defendant Fannie Mae and Defendant Servicer have failed to comply with Defendant Fannie Mae's own servicing requirements that in the event of a borrower dispute that "the servicer will ensure that borrowers have an effective means to communicate" and resolve the dispute, and further that "a server generally will not commence foreclosure proceedings without a thorough review of the circumstances surrounding that dispute and reasonable efforts to resolve the dispute." Fannie Mae Single Family/2006 Servicing Guide/Part 1, 311.

57.     These same servicing requirements further mandate that should a loan become "delinquent", the servicer should pursue "every reasonable effort" to cure the delinquency, including a "personal face-to-face interview with the borrower" as an alternative to initiating a foreclosure proceeding.

58.     Nevertheless, in utter disregard for these requirements, which Mr. Harris clearly understood by his instruction not to proceed, Defendant Bank and Servicer wrongfully failed to halt Defendant Cohn's wrongful continuation of the foreclosure action with the filing of pleadings on October 13, 2009 and on October 19, 2009, and the assessing of further costs and fees to Mr. and Mrs. Allen's account.

59.     Then on November 17, 2009, Plaintiffs Ms. Angles and Mr. and Mrs. Allen suffered a personal tragedy when Ms. Angles' adult daughter died, leaving two young children, aged 9 and 7, who are now in Ms. Angles' custody and living in Plaintiffs' home, adding even greater anxiety to their fear of losing their home in the threatened foreclosure.

60.     The Allens, with the aid of previous Legal Aid counsel, filed their legal defenses to the foreclosure action in February 2010, including that they had the funds to pay the aggregate amount of all regular, rightful payments due on their mortgage

61.     When the Allens' July 2009 payment was refused, and it became clear that Defendant Servicer would not accept any further payments from them, Mr. and Mrs. Allen began setting aside the amount of their regular mortgage payment each month in a savings account. The Allens remain willing, ready and able to pay Defendant Bank and Servicer and Defendant Noteholder Fannie Mae all of the payments refused up to the time of this lawsuit and in the foreseeable future (bank statement attached as Exhibit 6).

62. Thereafter, Defendants voluntarily dismissed the foreclosure case on April 12, 2010, which dismissal was granted by the court, but have taken no actions to resolve the errors in the Allen's loan account nor indicated that the Allens and Ms. Angles can forward the amount of the regular payments due and reinstate their account.

63. Instead, Defendant Bank and Servicer has sent two more notices that Mr. and Mrs. Allen's loan account is in foreclosure and demanding $21,928.02 to bring the account current. This amount includes late fees, attorneys fees and legal costs, all wrongfully assessed as set forth above, and includes a wrongful "escrow deficiency" when, in fact, the Allens do not have an escrow account (attached as Exhibits 6A and 6B).

64. Defendants' continuing acts and failures to act, including significant loan servicing failure, breach, misrepresentation, negligence, indifference, and incompetence, wrongful debt collection and foreclosure, have caused these Plaintiffs two years of agonizing worry. Mr. and Mrs. Allen and Ms. Angles continue to live with the daily trauma of imminent foreclosure, the loss of Ms. Angles' business and loss of their home, significant damaged credit, as well as other serious and negative financial, physical, and mental consequences.

## COUNT I – TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (Against All Defendants)

65. Plaintiffs incorporate all prior paragraphs by reference.

66. Defendants continuing and knowing wrongful debt collection actions, including the threat of a second wrongful foreclosure are causing Mr. and Mrs. Allen and Ms. Angles significant harm.

67. There exists the strong likelihood that Mr. and Mrs. Allen and Ms. Angles will prevail on the merits of their claims as set forth above.

68.    Unless this Court restrains Defendants from further wrongful collection actions, Mr. and Mrs. Allen and Ms. Angles will suffer immediate, substantial and irreparable injury.

69.    The benefits to these Plaintiffs of obtaining injunctive relief are equal to or outweigh the potential harm incurred by Defendants if this Court grants the requested relief.

70.    The public interest is best served by granting injunctive relief insofar as such relief effectuates the important purposes of recently enacted statutory law and court rules, and because it is unlikely that Defendants will conform their conduct to the law and the rules without such relief, it therefore will prevent wrongful use of important judicial resources.

71.    The Court should dispense with a bond for the Temporary Restraining Order or Preliminary Injunction pursuant to Maryland Rule 15-503(c), due to the extraordinary hardship it would cause the Plaintiffs, and in view of the more than $10,000 Plaintiffs have set aside in good faith to cover mortgage payments for the past year.

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles demand:

a.    That this Court issue an Order granting Plaintiffs a temporary restraining order restraining and enjoining Defendants from any further debt collection actions including foreclosure on the Subject Property;

b.    That this Court issue and Order granting Plaintiffs a preliminary injunction restraining and enjoining Defendants from any further debt collection actions including foreclosure on the Subject Property;

c.    That this Court issue an Order granting Plaintiffs a permanent injunction restraining and enjoining Defendants from any further debt collection actions including foreclosure on the Subject Property; and

d.    such other and further relief that the nature of their cause may require.

## COUNT II – VIOLATION OF THE MARYLAND DEBT COLLECTION ACT
### (Against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP, Defendant Edward S. Cohn, Esq. and Defendant Fannie Mae)

72.     Plaintiffs incorporate all prior paragraphs by reference.

73.     The Maryland Consumer Debt Collection Act (MCDCA) provides the following definitions: "'Collector' means a person collecting or attempting to collect an alleged debt arising out of a consumer transaction. 'Consumer transaction' means any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family or household purposes." Md. Code Ann., Com. Law §§ 14-201(b) and (c).

74.     The mortgage loan serviced by Defendant BAC Home Mortgage is governed by the Maryland Consumer Debt Collection Act, Md. Code Ann. Commercial Law § 14-201 *et seq.*

75.     MCDCA § 14-202(8) mandates that in attempting to collect an alleged debt a collector may not claim, attempt or threaten to enforce a right with knowledge that the right does not exist.

76.     Defendant Bank and Servicer knew or should have known that Mr. and Mrs. Allen were not in default and did not owe the costs and fees assessed against them, specifically:

    a.   Defendant Servicer knew or should have known that Mr. and Mrs. Allen had entered into an "Equity Accelerator" agreement with Defendant Servicer's predecessor servicer, and that their payments were automatically debited from their bank account;

    b.   Mr. and Mrs. Allen repeatedly challenged Defendant Servicer's allegations of default and repeatedly supplied documentation and bank statements that contradicted the alleged default;

16

    c.  Defendant Bank and Servicer knew or should have known that no payments had

         been declined by Plaintiffs' bank;

    d.  Defendant Western Union sent to Defendant Bank and Servicer both a payment

         history of debits from Mr. and Mrs. Allen's bank account and a statement

         confirming that it had failed to make the December 2008 payment on time, that

         the payment was subsequently made and that no fess should be assessed.

    e.  Maryland Code Annotated, Commercial Law § 12-1011 allows Defendant

         Servicer to charge only default related costs and fees only if a consumer borrower

         actually defaults under the terms of the loan, which Mr. and Mrs. Allen did not.

77.     Defendant Bank and Servicer wrongfully attempted to collect debts that Mr. and

Mrs. Allen did not owe by instructing Defendant Cohn to initiate a foreclosure action against

them, and thereafter by wrongfully failing to withdraw those instructions.

78.     Defendant Cohn received direct written communication that the debt being

claimed by Defendant Bank and Servicer was vigorously disputed by Plaintiffs and should have

known that the foreclosure action to collect such a debt should not proceed. Nevertheless,

Defendant Cohn wrongfully continued the collection attempts.

79.     A collector who violates any provision of this subtitle is liable of any damages

proximately caused by the violation, including damages for emotional distress or mental anguish

suffered with or without accompanying physical injury pursuant to MCDCA § 14-203.

80.     As a direct and proximate result of Defendant's violation of the Maryland

Consumer Debt Collection Act, Mr. and Mrs. Allen and Ms. Angles have suffered damages,

including damages for emotional distress and mental anguish.

17

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against the Defendants, jointly and severally, and demand:

    a.  judgment in the amount of $1,000,000 plus fees and costs; and

    b.  such other and further relief that the nature of their cause may require.

### COUNT III – VIOLATION OF THE CONSUMER PROTECTION ACT
### (Against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP)

81.    Plaintiffs incorporate all prior paragraphs by reference.

82.    Mr. and Mrs. Allen's mortgage note, the Program, and Plaintiffs' deed of trust are governed by the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 *et seq.* as Plaintiffs are consumers and their mortgage loan, including servicing, is a consumer transaction involving consumer credit, and Defendant Bank and Servicer, and Defendant Western Union are merchants within that provision's definitions by making consumer credit and consumer payment agreements available.

83.    A violation of the Maryland Consumer Debt Collection Act is also a violation of the Maryland Consumer Protection Act pursuant to Md. Code Ann., Com. Law § 13-301(14)(iii).

84.    Regardless of the applicability of the Consumer Debt Collection Act, Defendants have violated the Maryland Consumer Protection Act § 13-303 by engaging in unfair or deceptive trade practices as follows:

    a.  Defendants acted unfairly and deceptively by making false, falsely disparaging, or misleading oral or written statements or other representations which had the capacity, tendency, or effect of deceiving or misleading Mr. and Mrs. Allen pursuant to Md. Code Ann., Com. Law § 13-301(1) by presenting the Equity Accelerator Program as a way to enhance their equity, save substantial interest on

their mortgage loan, and as having the "flexibility" to accommodate any of Mr. and Mrs. Allen's mortgage payment needs, when in fact, the Program failed to do so;

b. Defendants made representations to Mr. and Mrs. Allen that their payments would be made accurately and on time, when in fact, they were not;

c. Defendants made representations to Mr. and Mrs. Allen that they would be able to continue the Program accurately and without interruption when the servicing of their mortgage was transferred, which in fact, they were not;

d. Defendants made representations that this extension of consumer credit to Mr. and Mrs. Allen had characteristics which it did not per Md. Code Ann., Com. Law § 13-301(2)(i);

e. Defendants deceived Plaintiffs by failing to state material facts per Md. Code Ann., Com. Law § 13-301(3);

f. Defendants omitted material facts that deceived Plaintiffs per Md. Code Ann., Com. Law § 13-301(9); and

g. Defendants may have violated this statue in other ways to be determined.

85. As a direct result, Mr. and Mrs. Allen and Ms. Angles have suffered damages, including but not limited to stress, embarrassment and humiliation.

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against all Defendants, jointly and severally, and demands:

a. judgment in the amount of $1,000,000 plus fees and costs; and

b. such other and further relief that the nature of her cause may require.

19

## COUNT IV – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (Against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP, and Defendant Edward S. Cohn))

86.     Plaintiffs incorporate all prior paragraphs by reference.

87.     Defendants are debt collectors within the meaning of the Fair Debt collection Practices Act (FDCPA) 15 U.S.C. § 1692 in that it regularly collects debts owed to another.

88.     Defendants asserted that Plaintiffs' loan was in default when they became its servicer and therefore subject to FDCPA.

89.     Defendants have repeatedly, incorrectly stated the amount and status of Mr. and Mrs. Allen's loan, which Mr. and Mrs. Allen have disputed repeatedly in writing.

90.     Defendants have threatened and attempted to foreclose on Plaintiffs' home without the legal right to do so and otherwise wrongfully communicated information to third parties regarding Mr. and Mrs. Allen's loan.

91.     Defendants had engaged and are continuing to engage in conduct that has resulted in harassment, oppression and abuse of the Plaintiffs.

92.     Due to the repeated and continuing violations of FDCPA, Plaintiffs are entitled to actual and statutory damages under 15 U.S.C. § 1692(k).

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against said Defendants, jointly and severally, and demands:

    a.   judgment in the amount of $1,000,000; and

    b.   reasonable fees and litigation costs; and

    c.   statutory damages of $1,000; and

    d.   such other and further relief that the nature of her cause may require.

## COUNT V – BREACH OF CONTRACT
### (Against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP, Western Union Company and Fannie Mae)

93.     Plaintiffs incorporate all prior paragraphs by reference.

94.     Defendants breached their contractual obligations to Mr. and Mrs. Allen and to Ms. Angles in at least the following ways:

a)  by failing to properly debit mortgage payments from their bank account after September 2008;

b)  by failing to properly apply all mortgage payments received after that date to principal and interest according to the terms of the note, the deed of trust and the Program related to their mortgage loan;

c)  by assessing late payment charges and fees the their loan account which were not owed under the terms of deed of trust and the Program;

d)  by declaring Mr. and Mrs. Allen to be in default of their note and deed of trust when no default exists;

e)  by initiating foreclosure proceedings contrary to the terms of their note and deed of trust.

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against these Defendants, jointly and severally, and demands:

a.  judgment in the amount of $1,000,000 plus fees and costs; and

b.  such other and further relief that the nature of their cause may require .

## COUNT VI – NEGLIGENCE
### (Against All Defendants)

95.     Plaintiffs incorporate all prior paragraphs by reference.

96.     Defendant Noteholder Fannie Mae and Defendant Bank and Servicer itself and as agent for Defendant Noteholder Fannie Mae owed Mr. and Mrs. Allen and Ms. Angles a duty of reasonable care in the servicing of the mortgage loan secured by their home.

97.     Defendant Noteholder Fannie Mae has set forth the standard of reasonable care required for the servicing of loans that it holds in "Fannie Mae Single-Family Seller/Servicer Guide ("Guide"), Part I, Chapter 2, 202: Servicers' Basic Duties and Responsibilities (09/30/06) as follows:

> As a general matter, servicers should have sufficient properly trained staff, and adequate quality control assurance procedures in place to carry out all aspects of their servicing duties; to protect against fraud, misrepresentation, or negligence by any parties involved in the mortgage servicing processes; to protect our investment in the secured properties; and to provide borrowers with assistance when it is requested.

98.     In section 201.09, Defendant Noteholder Fannie Mae lists the failure to deposit and transmit borrowers' funds, such occurred with Plaintiffs' funds as a failure of Defendant Bank and Servicer to comply with their servicing obligations.

99.     In Part I, Chapter 3, 311of the Guide, Defendant Noteholder Fannie Mae requires that Defendant Bank and Servicer "promptly respond to all inquiries received from borrowers" and that "this particularly will be the case in the event of a borrower dispute" and that Defendant Bank and Servicer "will ensure that borrowers have an effective means to communicate with servicer about disputes" that will "facilitate resolution of the dispute."

100.    In addition, section 311 notes that "to the extent that there is an ongoing dispute with a borrower, we expect that a servicer generally will not commence foreclosure proceedings without a thorough review of the circumstances surrounding that dispute and reasonable efforts to resolve the dispute."

101.     Defendant Noteholder Fannie Mae specifically requires adequate measures to be undertaken to prevent delinquencies and to resolve related disputes as set forth in Part IIV, Chapter 3 of the Guide: "The servicer **must** analyze each delinquent account to determine the reason for the default; whether the reason is a temporary or permanent condition; and the borrower's commitment and capacity toward repayment of the debt." (emphasis added).

102.     Finally, in Part I, Chapter 3, 306, Defendant Noteholder Fannie Mae requires that Defendant Bank and Servicer and Defendant Cohn "be aware of, and in full compliance with" all federal, state, local and otherwise legal requirements for the servicing of mortgages related debt collection.

103.     Had Defendant Bank and Servicer engaged in even the most minimal of these requirements of prompt response to borrowers and reasonable investigation, it could have resolved the problems with Mr. and Mrs. Allen's loan account in a timely and proper manner.

104.     Defendant Noteholder Fannie Mae failed outright to adhere to its own standard of care and required the same of Defendant Bank and Servicer, and had Defendant Cohn, as Defendant Noteholder Fannie Mae's agent, wholly failed to satisfy the stated standard of care owed to Mr. and Mrs. Allen for the proper servicing of their mortgage account.

105.     Defendant Bank and Servicer's negligent failure to respond promptly to Mr. and Mrs. Allen's continual attempts to straighten out their account, negligent failure to undertake even the most minimal steps to understand the errors in the account, and negligent failure to accept the Allens' and Ms. Angles' payments, all of which subjected them to wrongful foreclosure actions pursued by Defendant Cohn on behalf of Defendant Noteholder Fannie Mae, wrongful fees and costs, stress, great anxiety, loss of credit and other damages.

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against all Defendants, jointly and severally, and demand:

      a.  judgment in the amount of $1,000,000 plus fees and costs; and

      b.  such other and further relief that the nature of their cause may require .

## COUNT VII –VIOLATION OF RESPA
### (Against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP)

106.    Plaintiffs incorporate all prior paragraphs by reference.

107.    The loan at issue in this case is a Federally-related mortgage loan and as the servicer of said loan, Defendant Bank and Servicer is subject to the requirements of the Real Estate Settlement and Procedures Act (hereafter "RESPA") set forth at Title 12 U.S.C. § 2601, *et seq.*

108.    Title 12 U.S.C. § 2605 governs loan servicing and administration of escrow accounts.  Section 2605(e) specifically establishes the duty of the loan servicer to respond to a borrower's "qualified written request" for loan account information in a timely and proper manner, including the duty to undertake an investigation and make timely corrections accordingly, or to provide the borrower with a detailed explanation of why the corrections should not be made and the individual with whom the borrower may discuss any disputed entries.

109.    Defendants violated § 2605(e)(2) of RESPA by failing to properly take any of the required actions to the qualified written request Mr. and Mrs. Allen sent in August 2009, of which the Defendant acknowledged receipt in accordance with § 2605(e)(1)(A), in September, 2009, and by Mr. Harris in October, 2009.

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against Defendants, jointly and severally, and demand:

24

a.   An award of actual damages, plus prejudgment interest under 12 U.S.C. § 2605(f)(1)(A);

b.   An award of Statutory damages for repeatedly failing to properly take the required actions in the amount of $1,000 for each failure, the repetition of plus prejudgment interest under 12 U.S.C. § 2605(f)(1)(B);

c.   An award of costs under 12 U.S.C. § 2605(f)(3);

d.   Such other and further relief that the nature of their cause may require.

## COUNT VIII – DISPARAGEMENT OF TITLE
### (Against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP and Defendant Cohn)

110.   Plaintiffs incorporate all prior paragraphs by reference.

111.   Defendants had all the information necessary to know that Mr. and Mrs. Allen were not in default and that their loan account should not have been placed in foreclosure.

112.   Defendants wrongfully filed an Order to Docket initiating a foreclosure action in Baltimore County Circuit Court against Mr. and Mrs. Allen and Ms. Angles creating a public record that Plaintiffs had defaulted on their mortgage when they had not.

113.   Nevertheless, Defendants continued to pursue the foreclosure action, and Defendant Cohn wrongfully attached a copy of the Order to Docket to the front of Plaintiffs' home and in full public view.

114.   As a result of Defendants' reckless disregard for the facts, Mr. and Mrs. Allen and Ms. Angles suffered substantial damage to their credit and deprived them of economic benefits to which they otherwise would have access, most specifically in the denial of their application for refinancing and for a reverse mortgage.

25

WHEREFORE, Mr. and Mrs. Allen and Ms. Angles bring this action against all

Defendants, jointly and severally, and demands:

      a)  judgment in the amount of $1,000,000 plus fees and costs; and

      b)  such other and further relief that the nature of her cause may require.

*I solemnly affirm under the penalties of perjury that the contents of the foregoing Complaint are true to the best of my knowledge, information and belief.*

William L. Allen, Plaintiff

*I solemnly affirm under the penalties of perjury that the contents of the foregoing Complaint are true to the best of my knowledge, information and belief.*

Ann L. Allen, Plaintiff

*I solemnly affirm under the penalties of perjury that the contents of the foregoing Complaint are true to the best of my knowledge, information and belief.*

Denise Angles, Plaintiff

## PRAYER FOR JURY TRIAL

Mr. and Mrs. Allen and Ms. Angles hereby pray that this action be tried by jury.

Respectfully submitted,

Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)

Kathleen S. Skullney
(Of Counsel)

*Attorneys for Plaintiff Lorrie Yinger*